* WRIGHT, J.
The defendant being the owner of lot fifty in [311 Hillsborough, employed Allen Trimble as his agent, to subdivide it, and ascertain how much it would sell for, reserving the corner for the owner. The agent, about the 24th of February, 1816, having divided the lot into four parts, employed a crier to cry them round the streets, in order to see how much each part was worth, except the corner. The crier reported that he was offered by three several ■persons for the three lots, an aggregate of $1,730. The complainant had before applied to purchase the whole lot, and being dissatisfied With the proceedings for a subdivision, complained, and immediately wrote to a friend in Baltimore, to purchase for him the whole lot of the defendant. In the meanwhile, Allen Trimble, the agent, and a brother of the complainant, delayed for some days forwarding advice of his subdivision and the ascertained price, in order, as he says, to see if the defendant would sell. The complainant’s agent, on the 12th March, 1816, entered, for him, into a contract with the defendant, for the purchase of the whole lot, at $2,000. He was to pay $500 in cash, and give three notes, each for $500, payable in one, ' two and three years, on interest, and obtained from the defendant a bond for a deed. Before the 8th of April following, the defendant received the letter of his agent, advising of the division and price, and on that day wrote to him, and empowered him to ratify either ' the sale to the complainant, or to sell to those bidding to the crier,' as he might think best. The agent, misconceiving the import of ‘ the authority, cancelled the contract with the complainant, for three-fourths of the lot, leaving it in force as to the corner, and the complainant took possession of the corner 'lot and still holds. The bidders for the other three-fourths of the lot made no movement to effect their purchases, and no steps were taken to compel them to pay, or complete their purchases, or against the comjolainant.
In December, 1818, the defendant wrote to Allen Trimble, to inquire about the business. In his reply of the 7th of February, 1819, Allen Trimble disclosed the reason of his delaying the information of the subdivision and the proposed prices, to be, that he ‘was displeased with the defendant for Some bad treatment, and that, *318 in consequence, he intended to afford the complainant opportunity to purchase, if the defendant would sell. In 1822, the defendant appointed another agent, and displaced A. Trimble. A. Trimble then wrote' to the defendant, and informed him of the neglect and refusal of the bidders for three-fourths of the lot to complete any purchase, and wishing him to appoint another agent.
312] *In March, 1825, A. Trimble, being in Baltimore, called on the defendant with his account, in order to obtain abalance which he claimed as due him. During the conversation between them, the transactions relative to the lot were alluded to, when mutual explanations took place, each taking a portion of the blame to himself. A. Trimble then informed the defendant that the complainant was still willing to comply with his contract for one-fourth of the lot, and pay the price agreed upon, as he desired to settle all disputes. A. Trimble then, at the request of the defendant, wrote an agreement, dated back to March, 1816, to ratify and confirm the contract with the complainant, for the corner, at the price agreed upon originally, deducting what others had proposed for three-fourths. This agreement was executed by the defendant, and sent to the complainant, and is the same upon which the bill is founded. The price in the contract was left with a reference to the original agreement, because neither the defendant nor A. Trimble, when the agreement was Avritten, had the first contract, or the date or prices. The payment was to be made to A. Trimble, on account of the balance due him.
On the 12th of May, 1825, the complainant paid to A. Trimble $270, the difference between the contract price of $2,000 and the $1,730, without any interest, and A. Trimble agreed to repay him if no deed for the lot could be obtained. Of this payment the defendant was informed, and a deed demanded and refused. Afterwards a dispute arose between the parties, and the matter has lain in that way ever since. The bill prays a deed, in performance of the contract. The decree is resisted, on the ground that the contract was obtained by fraud, and because, if otherwise, the payments have not been completed.
If this application had been to enforce the original contract, the collusion between the complaint and A. Trimble, to keep back the subdivision of the lot, and the offers made to the crier, to enable the complainant to obtain a favorable contract of the defendant, while ignorant of the value, it is probable this court would hold the contract vitiated by that fraudulent suppression of these facts, or at least would refuse, on that account, to enforce it. But however that may be, the defendant, in 1825, nine years after he knew the *319 facts fully, and after the total failure to pay in the times specified, voluntarily proposed a ■ new contract, when he felt conscious he 'had wronged his friend and-¿agent, and had become reconciled to him, but was unable to pay 'him what' was acknowledged to be *his due, and relied upon the money .to be raised oip-tlfat to. [313 pay off his friend. That contract is untainted with any pretence of fraud; it in terms overreaches all the others. The only condition of its becoming obligatory on the defendant, urns its acceptance, by the complainant, and to procure that acceptance, and for the receipt of the money on account of'the balance, clue him, he.constituted A. Trimble again his agent. In that capacity* the agent received what he understood was due on the contract, and in that way, as was supposed, completed the contract on the part of the complainant. No complaint appears to have been made since then of the non-payment of the money; but other disputesarising, the deed was refused, unless the money was paid to the new agent. This was an .attempt to impose a new condition upon the contract, and cannot avail the party.
But as the defendant also resists the conveyance on the ground of the non-performance by the comjdainant of his part of the contract,-wre must look to it, in order to find its legal import. -We think its obvious construction to be, a mere ratification 'of the original contract for the lot,-so far as it regarded the corner, deducting from the agreed price of the whole, the sum others proposed to give for the other three-fourths of the lot; $2,000 was the agreed price of the whole on the 9th of March, 1816, $1,130 the proposed price for the other three-fourths; deduct this from the whole price, and there remained, for the complainant to pay for the corner, two hundred and seventy dollars. By the terms of the contract, this wras on interest from the date; Of the purchase, March, 1816, and that sum without increase for interest, was paid to A. Trimble, on the 12th of May, 1825. There was then due for the land, over and above what was paid, the interest calculated according to the original contract. The defendant has still a right to receive that sum, with the interest upon it from that time to this. As this sum does not seem to have been withheld by design, but by misconception of the legal effect of the contract, it furnishes no ground for refusing to decree a conveyance upon the payment of it now. "We are confirmed in this construction of the contract, by the consideration that nothing is said on either side about the rents or taxes on the corner since the complainant took possession. Calculated upon this principle, there is now due the defendant on account of the lot $209.05,
*320 "We decree that the complainant p>ay that sum, with accruing in-314] terest, in sixty days, or that execution issue for it; and that *the defendant, within sixty days after the payment, convey to him the said corner lot, in fee simple, with covenants of warranty.
Each party will pay his own costs.